NOTICE

Decision filed 02/03/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250917-U

NO. 5-25-0917

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 25-CF-501 |
| | ) | |
| EUGENE R. MILLER, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    Defendant Eugene R. Miller appeals pursuant to the Pretrial Fairness Act (725 ILCS 5/110-1 *et seq.* (West 2024)) from the Macon County trial court's June 3, 2025, order granting the State's petition to deny pretrial release, as well as the court's November 4, 2025, order denying his motion for relief and immediate release. The defendant did not file a memorandum in support of his appeal. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On April 7, 2025, the defendant was charged by information with one count of unlawful delivery of methamphetamine, a Class X felony. 720 ILCS 646/55(a)(2)(D) (West 2024). The State

1

filed a verified petition to deny pretrial release the same day, alleging that the defendant was charged with a felony offense with a mandatory sentence of imprisonment and that he posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(1) (West 2024). An arrest warrant was served on the defendant on June 2, 2025. The trial court held a hearing on the State's petition on June 3, 2025.

¶ 5                           A. Hearing on Petition to Deny Pretrial Release

¶ 6     The trial court began by stating that the defendant was charged with an enhanced Class X felony, based on the State's allegation that he possessed with the intent to deliver an amount of methamphetamine weighing at least 100 grams and less than 400 grams. The court added that the charge carried minimum and maximum sentences of 9 and 40 years, respectively, as well as a 3-year term of mandatory supervised release.

¶ 7     The State presented its evidence by proffer, referencing the sworn statement of Detective Jeffrey Hockaday. His statement had been submitted in support of a request for an arrest warrant for the defendant. According to the State, the defendant was recorded on video acting as the delivery person for Brandon Pugh, who was the subject of an investigation by the Decatur Police Department's Street Crimes Unit. Detective Hockaday's sworn statement provided that he arranged for an undercover confidential informant (CI) to purchase methamphetamine from Pugh; the purchase would be audio- and video-recorded.

¶ 8     According to Hockaday, the CI called a man he stated was Pugh, and ordered four ounces of methamphetamine from him on May 18, 2023. Later that day, the CI, wearing audio- and video-recording devices, went to meet Pugh at a prearranged location. However, a different individual arrived in place of Pugh to deliver the drugs. Crime lab testing later revealed that the substance the

2

CI purchased weighed 112 grams[1] and tested positive for methamphetamine. Detective Hockaday reviewed the recording of the transaction captured by the CI and identified the defendant as the man who met with him and delivered the methamphetamine.

¶ 9 The State also argued that the defendant was a danger to the community because he was willing to commit a Class X felony, and was marked as extremely high risk of reoffending on the Virginia Pretrial Risk Assessment (VPRA). His juvenile criminal history included adjudications for domestic battery and aggravated criminal sexual abuse. As an adult, he was convicted of multiple robberies, second degree murder, and a sex-offender registration violation.

¶ 10 The defense proffered that the defendant resided in Macon County and had family support there. He had recently completed community college and planned to use the certificates he received to obtain employment. Counsel further noted that while the alleged incident happened on May 16, 2023,[2] the arrest warrant application was made on April 7, 2025. If the State believed the defendant to be a danger to the community, then counsel implored why it would take over two years to file for an arrest warrant. The defense argued that the defendant was not a threat to the safety of anyone in the community, and, even if he were found to pose a threat, there were less restrictive conditions available to mitigate any danger.

¶ 11 Furthermore, the defendant had other pending charges in other cases and had been attending court regularly in each of those cases. Counsel therefore argued that there were conditions available to ensure that he would appear at future court dates in the present case. Counsel added that the defendant turned himself in when he learned of the warrant, as the officers

---

[1]The State later amended the charging document to reflect 108 grams, rather than 112.
[2]The charging instrument and incident report reflect that the incident occurred on May 18, 2023, and thus it appears that counsel misspoke.

were not pursuing it. Counsel suggested conditions that the defendant would agree to, including electronic monitoring under home confinement and a curfew.

¶ 12    The trial court granted the State's petition and denied pretrial release. In explaining its ruling, the court stated that it was "very concerned" by the weight of the methamphetamine at issue, and by the defendant's criminal history. This criminal history included second degree murder, a registered sex offender case, and another felony case from 2024 that did not appear in the original search. Probation had deemed him to be "an extremely high risk" for reoffending. He also had a serious juvenile record and was given a full commitment. The trial court considered this criminal history against the "not a lot of trouble" that the defendant had displayed in the past couple of years and found that detention was warranted.

¶ 13    The trial court entered a written order reflecting its ruling on June 3, 2025. In its order, the court found that the State had proven the dangerousness standard by clear and convincing evidence. The court further found that the proof was "great" that the defendant committed the offense, his criminal history was "very poor," and he posed an extremely high risk of danger.

¶ 14                              B. Motions for Relief

¶ 15    The defendant filed a *pro se* motion for relief on July 28, 2025, arguing that the State had not provided any evidence of his guilt, that Detective Hockaday's statement was unsigned and fabricated, that there was no DNA or fingerprint evidence or audio or video recording of the defendant's involvement in any drug-related activity, that he was not a flight risk or a danger to the community, that he was not on probation or parole, and that the case was over two years old and based on "fabricated evidence." The defendant attached to his motion various reports related to the case, with the defendant's writing on them indicating alleged proof of his claims.

4

¶ 16    The trial court heard the defendant's motion for relief on July 29, 2025, along with various other motions filed by the defendant. The defendant restated his arguments from his motion, and the State rested on its argument made at the prior hearing. The trial court denied the defendant's motion, finding that the proof was evident and the presumption great that he did commit a detainable offense. It further found that no condition or combination of conditions could mitigate the real and present threat of danger that he posed.[3]

¶ 17    On October 29, 2025, the defendant, through new counsel, filed a subsequent motion for relief. He argued that the State failed to show that he posed a real and present threat to the safety of any person or persons or the community and did not address any possible conditions of pretrial release in its petition, and the trial court thus erred in finding that he posed a threat to safety and that no conditions could mitigate that risk. He added that the State concluded its investigation in 2023 but did not seek a warrant for the defendant until 2025, and that the defendant had completed trade coursework, been employed, and complied with the terms of pretrial release whenever they had been imposed on him. He further argued that the State was required to present evidence based on the defendant's individual background, and not merely the nature and circumstances of the alleged conduct, but failed to present any evidence.

¶ 18    The trial court held a hearing on the new motion for relief on November 4, 2025. Defense counsel referred to the defendant's education and employment histories and provided proof of an offer of employment that he had received in December 2024. Counsel also stated that the defendant

---

[3]The defendant filed a notice of appeal on July 8, 2025, prior to the filing of his motion for relief. Because the notice of appeal was premature, it was properly stricken. As no new notice of appeal was filed following the trial court's denial of the defendant's motion for relief, we dismissed the appeal as moot upon the unopposed motion of the defendant's appellate counsel. See *People v. Miller*, No. 5-25-0616 (2025) (unpublished order).

was working while in jail. The State asked the trial court to take judicial notice of its findings at the original detention hearing and the hearing on his previous *pro se* motion for relief.

¶ 19    During argument, defense counsel noted that the State checked only the box indicating that the defendant was charged with a qualifying offense and his pretrial release posed a threat to the safety of any person or persons or the community; the State did not make any allegations that no condition or conditions could mitigate that threat. Counsel further argued that the trial court did not consider whether any such conditions were appropriate, and that evidence of the current offense was insufficient to support a denial of pretrial release.

¶ 20    Regarding the defendant's criminal history, defense counsel acknowledged that it was lengthy, but argued that the defendant admitted his guilt to the second degree murder charge by pleading guilty. Additionally, the second degree murder offense occurred when he was 19. While he also had a felony conviction for failing to register as a sex offender, the underlying sex offense also occurred while he was a youth; he was currently 37 years old, and these issues were long in his past. Lastly, defense counsel noted that the defendant was not the subject of the investigation that led to his arrest, no weapons were involved in the offense, and the police did nothing for two years after learning of his involvement in the drug deal, which ran contrary to the argument that he posed a danger to the community that no condition or conditions could mitigate.

¶ 21    At the end of the defense's argument, the trial court asked counsel whether she agreed that the court could not consider any new facts or argument that it had not heard on the first motion for relief, as anything else would "be in the nature of a motion to reconsider." Counsel disagreed, stating that the court could hear argument regarding what the trial court failed to consider in denying release.

6

¶ 22     The State argued that the defense had not raised anything new that the trial court did not hear and weigh in determining that detention was warranted. This included his employment history, his appearing in court on his pending charges, and his willingness to submit to conditions like electronic monitoring. Furthermore, the State argued that the trial court did not make its decision based solely on the nature of the offense, but on the defendant's individual characteristics. Quoting from the detention hearing transcript, the State noted that the trial court considered the amount of methamphetamine involved, the defendant's extensive and serious prior criminal history and juvenile history, which ranged from multiple traffic offenses to second degree murder, and his score on the VPRA.

¶ 23     The State added that, among his numerous prior offenses, the defendant resisted a peace officer in 2023, and was on conditional release for that conviction when the present case was filed. He also had other past charges of violating probation and conditional discharge. The State further argued that, in the present matter, even if the defendant was not the main subject of investigation, he was charged with a Class X felony for his active participation in a drug conspiracy.

¶ 24     The trial court began its ruling by noting that it was undisputed that the State had shown that the defendant committed a detainable offense. Next, the trial court found that the State had shown by clear and convincing evidence that the defendant was a real and present threat to the safety of the community. In explanation, the court referenced the "significant quantity" of methamphetamine involved, the fact that the quantity amounted to a Class X felony, and the defendant's criminal history. Regarding the latter, the trial court noted his second degree murder conviction, acknowledging that it took place in 2012 but also stating that he received a 14-year sentence. The trial court also considered the fact that the VPRA rated him an "extreme risk." The court further recognized that the present case was almost two years old at the time of filing.

¶ 25    Turning next to the conditions of pretrial release, the trial court stated that, given the quantity of drugs involved in the offense, it was not sure that home confinement or electronic monitoring would dissuade the defendant from having and dealing drugs. The trial court ruled that, after having considered all conditions and combinations of conditions of pretrial release, detention was warranted. Thus, the court denied defendant's motion for relief. The defendant filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h), which conferred jurisdiction on this court. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024).

¶ 26                                    II. ANALYSIS

¶ 27    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024).

¶ 28    If the State files a petition requesting denial of pretrial release:

> "[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7.

See also 725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; see also *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 ("Clear and convincing evidence is that quantum of proof that leaves no reasonable

8

doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.)).

¶ 29 The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the court concludes the defendant "poses a real and present threat to the safety of any person" or the community. 725 ILCS 5/110-6.1(a)(1) (West 2024). The statute provides a nonexclusive list of "[f]actors to be considered in making a determination of dangerousness" that the trial court may consider in assessing whether the defendant poses such a threat. 725 ILCS 5/110-6.1(g) (West 2024). These include the nature and circumstances of any offense charged, the defendant's history and characteristics, the identity of any person whose safety the defendant is believed to threaten, and "[a]ny other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(9) (West 2024).

¶ 30 If the trial court finds the State proved a threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In making this determination, the court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release; and (5) the nature and seriousness of the risk

9

of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024).

¶ 31    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. In the latter case, as here, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 32    The defendant did not include any additional argument on appeal. In his second motion for relief, he contended that the trial court improperly relied on the nature of the underlying offense and failed to consider any individual characteristics of the defendant in finding that the defendant posed a danger to the safety of any person, persons, or the community. He also argued that the State did not present any argument or facts establishing that no condition or combination of conditions could mitigate the threat of dangerousness. We agree with the trial court that it is undisputed that the defendant committed a qualifying detainable offense. See 725 ILCS 5/110-6.1(a)(1) (West 2024).

¶ 33    The record shows that the trial court thoroughly reviewed the evidence presented and considered all relevant statutory factors in denying pretrial release based upon a finding under the dangerousness standard and a determination that no condition or conditions could reasonably ensure the safety of the public. Furthermore, in considering the statutory factors, the trial court sufficiently grounded its conclusions in the "specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1) (West 2024).

¶ 34    The hearing transcripts reflect that the court noted the nature and circumstances of the alleged offense—not as a generalized sole determining factor, but as one element balanced against

the rest of the proffered evidence. The trial court was particularly concerned by the amount of methamphetamine that the defendant delivered, which qualified as a Class X felony. Furthermore, the societal harm from drug crimes is well-established in Illinois. See *People v. Woods*, 2024 IL App (4th) 240190, ¶ 20 (providing statutory examples reflecting the legislature's recognition of the societal harms posed by the sale of illegal drugs).

¶ 35    The trial court also found the defendant's juvenile and criminal histories, as well as his very high likelihood of reoffending according to the VPRA, to weigh strongly in favor of detention based on the dangerousness standard. The trial court noted that the defendant was fully committed as a juvenile offender, and his adult criminal history included several convictions for offenses that indicated a violent character. His criminal history included convictions for second degree murder, robbery, two charges of resisting a peace officer, and violation of the sex offender registry, while his juvenile record included domestic battery and aggravated criminal sexual abuse.

¶ 36    The defense argued in its motion for relief that the most severe offenses occurred while the 37-year-old defendant was still quite young, noting in particular that he was 19 years old at the time of the second degree murder conviction. Counsel further contended that, after serving his sentence, the defendant sought to better himself by obtaining trade certifications and working. The trial court acknowledged the timing of the second degree murder conviction, as well as the defendant's education and employment histories. However, the court also noted that the defendant spent many years incarcerated, and he continued to demonstrate a disregard for the law in recent years, amassing convictions for driving on a suspended license twice, resisting a peace officer, and violating the sex offender registry within five years of the present offense. The defendant was also on conditional release when the present case was filed, although the defense also proffered that he

11

appeared in court on all of the unrelated charges he incurred between the date of the drug offense and his arrest.

¶ 37    We find that the trial court did not err in its consideration of all the proffered evidence and in its conclusion that the State met its burden of proof under the dangerousness standard that pretrial release should be denied. Additionally, we note that there is no basis in the Pretrial Fairness Act for the defense's argument that criminal history is no longer relevant in assessing present dangerousness if the offenses occurred several years ago or when the defendant was a young adult.

¶ 38    We turn next to the question of pretrial release conditions. In its motion for review, the defense argued that the State failed to allege that there was no condition or set of conditions that could mitigate any danger posed by the defendant, and the trial court improperly based its decision solely on the nature of the alleged offense. The defense further proffered that the defendant would submit to electronic monitoring and home confinement, with curfew restrictions. The State argues on appeal that none of the proposed conditions could prevent the defendant from committing further drug sales, as the transactions could take place at the home in which he was confined, and a curfew restriction would not have prevented the alleged offense, which took place in the morning.

¶ 39    The record on appeal contradicts the defendant's assertions. The State proffered evidence at the detention hearing that directly addressed the statutory factors the trial court must consider, and the trial court reviewed said required factors. Without repeating our discussion above, we find that the trial court fully considered the nature of the offense, as well as the history and characteristics of the defendant.

¶ 40    Furthermore, the weight of the evidence against the defendant was significant here, as the State's proffer indicated that there are audio and video recordings of the defendant meeting the CI

and delivering the drugs. When the CI returned from the transaction, he turned the acquired product over to law enforcement. Testing revealed that it was, in fact, 108 grams of methamphetamine.

¶ 41 As we also noted, the trial court recognized the societal harms that stem from the illegal sale of drugs. The court was not convinced that the conditions proposed by the defense, or any other conditions, would suffice where the risk of that harm was so severe, given the defendant's likelihood of reoffending and the large quantity of drugs he was delivering. While the defendant argued that he was willing to abide by pretrial release conditions, we note that his most recent criminal history, as well as the State's argument on appeal regarding the effectiveness of any conditions, does not support the defendant's position. We thus conclude that the trial court did not err in both granting the State's petition and denying the defendant's motion for relief.

¶ 42                                    III. CONCLUSION

¶ 43 Based on the foregoing reasons, we affirm the orders of the trial court of Macon County granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief.

¶ 44 Affirmed.